JANE YATES, Plaintiff-Appellee, v. FARMERS AUTOMOBILE INSURANCE ASSOCIATION, d/b/a Pekin Insurance Company, Defendant-Appellant.

Fifth District  No. 5—99—0188

Opinion filed February 8, 2000.

Robert Marc Chemers and Scott L. Howie, both of Pretzel & Stouffer, Chartered, of Chicago, for appellant.

Stephen C. Williams, of Womick Law Firm, Chartered, of Carbondale, for appellee.

JUSTICE MAAG delivered the opinion of the court:

This appeal involves a question regarding insurance coverage where the insured, Jane Yates, plaintiff-appellee, claims to be entitled to $100,000 in underinsured-motorist benefits pursuant to her insurance policy with the insurer, Farmers Automobile Insurance Association (Farmers), defendant-appellant. Farmers did not deny her benefits but contends that her policy limit is $50,000, less a setoff for amounts

she received from another source. On motions by both parties for judgment on the pleadings, the circuit court held that the limit of liability under the insurance policy was $100,000 less the setoff. Farmers appeals.

The parties agreed to the following statement of facts. Yates and Hazel Karstetler were injured and Reva Watson was killed when a vehicle driven by Robert Haub allegedly swerved into the path of the vehicle that Yates was driving. Haub was insured by Arkansas Farm Bureau at the time of the accident. Haub's insurance policy offered liability limits of $25,000 per person and $50,000 per accident. Arkansas Farm Bureau settled for the $50,000 per-accident limit by paying $20,000 to Yates, $20,000 to Karstetler, and $10,000 to Watson's estate.

Yates subsequently filed this action against her insurer, Farmers, seeking underinsured-motorist benefits from Farmers in connection with her settlement with Haub and Arkansas Farm Bureau. Yates sought a declaratory judgment that Farmers was obligated to her to the extent of $100,000, an amount she arrived at by aggregating the amounts stated as the limits of liability with respect to both of her vehicles. Farmers answered Yates's complaint and filed a counterclaim for declaratory judgment claiming that its policy contains an express antistacking clause forbidding the aggregation of liability limits according to the number of vehicles insured. Farmers also alleged that regardless of the liability limits available to Yates, it was entitled to a setoff of $20,000, the amount that Yates had received from Arkansas Farm Bureau on Haub's behalf. Farmers moved for judgment on the pleadings as to these legal issues.

The circuit court determined that the Farmers policy could be read to provide stackable limits of $50,000 for each of the two cars insured on the Farmers policy. The court also determined that Farmers was entitled to a setoff of $20,000, the amount that had already been paid by Arkansas Farm Bureau.

Farmers appeals the circuit court's judgment to the extent that it allowed the stacking of coverage available under its policy. Farmers claims that the circuit court erred in failing to enforce the policy's antistacking clause and its coverage limit of $50,000 per person.

The real question in this case is whether underinsured-motorist coverage under an insurance policy issued by Farmers for two separate vehicles may be "stacked," or aggregated. In other words, does the declarations page contained within Yates's policy create an ambiguity that would entitle plaintiff to $100,000 in underinsured-motorist coverage, rather than $50,000 in underinsured-motorist coverage?

In this case, we are confronted with a question of law as to whether the two underinsured-motorist coverages of the policy may be ag-

gregated. See *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 185, 620 N.E.2d 355, 358 (1993).

■ When determining the intent of the parties and the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purposes of the entire contract. See *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1078 (1993). The insurance contract must be interpreted from an examination of the complete document and not an isolated part. See *General Insurance Co. of America v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 514, 650 N.E.2d 1080, 1083 (1995).

The Farmers policy states, in the insuring agreement of its "Part C—Uninsured Motorists Coverage and Underinsured Motorists Coverage," as follows:

"UNDERINSURED MOTORISTS COVERAGE INSURING
AGREEMENT
We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of bodily injury:
1. Sustained by an 'insured;' and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'underinsured motor vehicle.' "

The policy defines "underinsured motor vehicle" as a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage. We note that the parties agree that Haub was insured under an insurance policy that met this definition. Haub's insurance policy offered liability coverage of only $25,000 per person or $50,000 per accident.

In the "Amendment of Policy Provisions—Illinois" section of Yates's policy, the Farmers policy states as follows:

"III. UNINSURED MOTORISTS COVERAGE/UNDERINSURED MOTORISTS COVERAGE
* * *
3. The Limit of Liability provision for Uninsured Motorist Coverage and Underinsured Motorist Coverage is replaced by the following:
LIMIT OF LIABILITY
a. The limit of liability *shown in the Declarations* for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. 'Insureds,'
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident." (Emphasis added.)

Farmers claims that the aforementioned section's item number 3 is an antistacking clause that expressly forbids the aggregation of both vehicles' underinsured-motorist benefits. We note, however, that the insurance policy's declarations page includes a statement directly above the policy limits that states as follows: "COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY OR THE WORD 'INCLUDED' ARE SHOWN FOR COVERAGE." Additionally, on the declarations page, the row corresponding to uninsured/underinsured-motorist insurance states limits of "50/100" and a premium of $5 under both "auto one" and "auto two."

The insurance policy contains provisions that are ambiguous and contradictory. In one part of the insurance policy, there is a provision claimed to be an antistacking provision. On the declarations page, the policy states that coverage is provided where a premium and a limit of liability are shown. On the declarations page, the policy shows limits of "50/100" and a premium under each of the two vehicles.

■ If an ambiguity exists in an insurance contract, the courts will adopt a liberal construction of the language used in favor of the insured, while the policy will be construed strictly (see *Grevas v. United States Fidelity & Guaranty Co.*, 152 Ill. 2d 407, 410, 604 N.E.2d 942, 944 (1992)) and strongly (see *Hannigan v. Country Mutual Insurance Co.*, 264 Ill. App. 3d 336, 339, 636 N.E.2d 897, 899 (1994)) against the insurer. The policy underlying this rule is the fact that the words that were used in the policy were chosen by the insurer; therefore, any ambiguity is chargeable to it. See *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 332, 104 N.E.2d 250, 254 (1952).

■ Since the policy contains inconsistent provisions, we must construe the policy in a manner that is most favorable to the insured. See *Stearns v. Millers Mutual Insurance Ass'n*, 278 Ill. App. 3d 893, 896, 663 N.E.2d 517, 519 (1996). Hence, we find that the circuit court's decision granting Yates $100,000 in underinsured-motorist coverage, a figure arrived at by aggregating the $50,000 limit for underinsured-motorist coverage on each of the two vehicles in Yates's insurance policy, was correct.

In light of the foregoing considerations, we affirm the circuit court's decision.

Affirmed.

GOLDENHERSH, P.J., and HOPKINS, J., concur.