No. 3–07–0297

Filed June 11, 2008

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| PROGRESSIVE PREMIER INSURANCE COMPANY, | ) ) | Appeal from the Circuit Court for the 13th Judicial Circuit, |
| Plaintiff-Appellee, | ) | LaSalle County, Illinois |
| | ) | |
| v. | ) | No. 06–MR–96 |
| | ) | |
| DIANE CANNON, Individually and as Mother | ) | Honorable |
| and Next Friend of Abigail Rhea Cannon, | ) | Eugene P. Daugherity |
| a Minor; DENNIS CANNON, Individually and as | ) | Judge, Presiding |
| Father of Abigail Rhea Cannon, a Minor; and | ) | |
| STEPHANIE KAY and FELICITY KAY, | ) | |
| Defendants-Appellants. | ) | |

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff Progressive Premier Insurance Co. filed this declaratory judgment action seeking a determination that coverage it was required to pay under the watercraft policy it issued to defendants Stephanie Kay and Felicity Kay was limited to $100,000 for an accident in which the Kays' two jet skis collided, injuring defendant Abigail Cannon. The trial court granted summary judgment in Progressive's favor. Abigail and her parents, defendants Diane and Dennis Cannon, appealed. We affirm.

FACTS

In July 2003, Stephanie Kay and Felicity Kay were operating separate jet skis on the Illinois River near the Starved Rock Marina. Abigail Cannon was a passenger on Stephanie's jet ski. The two jet skis collided, allegedly as the result of the negligence of Stephanie and Felicity. Abigail and

her parents filed a complaint against the Kays to recover for the substantial injuries Abigail sustained in the collision and for reimbursement for Abigail's medical expenses.

At the time of the accident, the Kays were covered under a boat and personal watercraft policy issued by Progressive for the two jet skis. The policy's declarations page stated, in pertinent part:

> "the following coverages and limits apply to each described vehicle as shown below. Coverages are defined in the policy and are subject to the terms and conditions contained in the policy, including amendments and endorsements."

The declarations page further stated, "[t]he coverage is applicable only if a premium is indicated." It described the jet skis as vehicle No.1 and vehicle No. 2 and set forth separate premiums for each jet ski. Under that listing, the policy stated the bodily injury coverage was $100,000 for each person and $300,000 for each accident. The reverse side of the declarations page stated that "[t]he information on the other side of the Declarations Statement is critical in that it identifies the coverages you have purchased and the time period in which they are in effect."

The policy provided, in pertinent part:

> **"INSURING AGREEMENT – BODILY INJURY**
>
> Subject to the Limits of Liability, if **you** pay a premium for **bodily injury** liability coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** for which an **insured person** becomes legally responsible because of an **accident** arising out of the ownership, maintenance, or use of a **water craft**.
>
> * * *

2

**LIMITS OF LIABILITY**

The Limit of Liability shown on the **Declarations Page** is the most **we** will pay regardless of the number of:

1.     claims made;

2.     **covered water craft**;

3.     **insured persons**;

4.     lawsuits brought;

5.     **water craft** involved in an **accident**; or

6.     premiums paid.

If **your Declarations Page** shows a split limit:

1.     the amount shown for 'each person' is the most **we** will pay for all damages due to a **bodily injury** to one (1) person[.]

* * *

The **bodily injury** limit for 'each person' includes the total of all claims made for **bodily injury** and all claim of others derived from such bodily injury."

Progressive filed the instant declaratory judgment action to obtain a ruling that its coverage was limited to $100,000. The Cannons responded with a counterclaim for a declaratory judgment in their favor, seeking a declaration that the applicable coverage was $200,000, consisting of $100,000 coverage for each jet ski. Progressive thereafter filed a motion for summary judgment, and following arguments, the trial court granted the summary judgment motion, determining that the limit of liability for the accident was $100,000 pursuant to the terms of the policy. The Cannons appealed.

ANALYSIS

The sole issue on appeal is whether the trial court erred when it found that coverage was limited to $100,000 and granted summary judgment in favor of Progressive. The Cannons argue that they are entitled to $200,000 in coverage under the terms of the Kays' watercraft policy. According to the Cannons, the proper interpretation of the policy is that $100,000 in coverage exists for each jet ski for which separate premiums were paid. They argue that the plain language of the policy dictates an interpretation in their favor. They argue in the alternative that the provisions are ambiguous and should be construed liberally in favor of coverage. They further argue that to deny them coverage under the circumstances would be violative of public policy.

Summary judgment is properly granted where the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. St. Paul Fire & Marine Insurance Co. v. Smith, 337 Ill. App. 3d 1054, 1058, 787 N.E.2d 852, 855 (2003). The interpretation of an insurance policy and the coverage provided are questions of law that are appropriate for resolution through summary judgment. Prudential Property & Casualty Insurance Co. v. Kelly, 352 Ill. App. 3d 873, 875, 817 N.E.2d 1226, 1228 (2004). This court reviews a trial court's grant of summary judgment *de novo*. Illinois-American Water Co. v. City of Peoria, 332 Ill. App. 3d 1098, 1102, 774 N.E.2d 383, 388 (2002).

An insurance policy is a contract and is subject to the general rules governing contract interpretation. Jones v. Country Mutual Insurance Co., 371 Ill. App. 3d 1096, 1098, 864 N.E.2d 793, 795 (2007). The primary objective in construing an insurance policy is to give effect to the intention of the parties as indicated in the policy language. Jones, 371 Ill. App. 3d at 1098, 864 N.E.2d at 795. A policy should be enforced as written if it is unambiguous and does not violate public policy.

4

Illinois Farmers Insurance Co. v. Hall, 363 Ill. App. 3d 989, 993, 844 N.E.2d 973, 976 (2006). If the clause is ambiguous, it should be construed in the insured's favor; if it is unambiguous, it must be enforced according to its terms. Hall, 363 Ill. App. 3d at 993, 844 N.E.2d at 976. The trial court determined that the instant policy language did not create an ambiguity and that the plain terms of the policy prohibited the stacking of coverage. The trial court pointed to the policy's antistacking provision, which states that the most Progressive would pay is $100,000 each person for bodily injury, regardless of the number of watercraft or premiums shown on the declarations page and regardless of the number of covered watercraft or insureds involved in the accident at issue. The trial court relied on Hobbs v. Hartford Insurance Co. of the Midwest, 214 Ill. 2d 11, 823 N.E.2d 561 (2005), Bruder v. Country Mutual Insurance Co., 156 Ill. 2d 179, 620 N.E.2d 355 (1993), and Grinnell Select Insurance Co. v. Baker, 362 F.3d 1005 (7th Cir. 2004), in determining that coverage was limited to $100,000 and that Progressive was entitled to summary judgment in its favor.

In Hobbs, at issue was whether the insured could stack limits of liability for underinsured motorist coverage where there were multiple vehicles covered under one policy. Hobbs, 214 Ill. 2d at 14, 823 N.E.2d at 562. In Bruder, the reviewing court considered whether uninsured coverage under two policies issued by County Mutual could be stacked. Bruder, 156 Ill. 2d at 181, 620 N.E.2d at 357. Similarly, in Grinnell, the issue was whether the limits on a policy covering two vehicles could be stacked for double coverage. Grinnell, 362 F.3d at 1005-06. In each case, the insureds' arguments that the policies were ambiguous and/or allowed stacking were rejected. The reviewing courts looked to the language in the policies' limits of liability provisions and on the declarations pages. Each court observed that the declarations page limit of liability was listed only once in spite of multiple vehicles insured and found that when read in conjunction with the express terms of the

5

antistacking provisions, the policies barred stacking of coverage. Hobbs, 214 Ill. 2d at 27, 823 N.E.2d at 570; Bruder, 156 Ill. 2d at 194, 620 N.E.2d at 363; Grinnell, 362 F.3d at 1007-08.

By contrast, in Johnson v. Davis, 377 Ill. App. 3d 602 (2007), the court held that the antistacking provision did not apply. The Johnson court based its conclusion on the policy's separate listing of limits of liability for each of the four covered vehicles on the declarations page. Johnson, 377 Ill. App. 3d at 610. The court noted that by listing each policy limit separately, an ambiguity arose in the policy in that an insured could reasonably presume separate limits applied to each covered vehicle. Johnson, 377 Ill. App. 3d at 609. The court further noted that the limit of liability clause in the underinsured motorist endorsement stated the maximum limit of liability was that shown on the declarations page. Johnson, 377 Ill. App. 3d at 609. The court determined that based on the endorsement language, the antistacking provision did not come into play, and if it did apply, its provisions were inconsistent with the declarations page. Johnson, 377 Ill. App. 3d at 609.

The language in the instant policy is more aligned with the policies in Hobbs, Bruder, and Grinnell than with the policy in Johnson. While the premiums and vehicles are listed individually on the declarations page, the limits of liability language is listed only once. The language in the antistacking provision at bar is similar to the language in the policies at issue in Hobbs, Bruder, and Grinnell. This court has previously held that where a separate premium appears for each vehicle and coverage limits are listed only once, there is no ambiguity created by the declarations page language. Kelly, 352 Ill. App. 3d at 876, 817 N.E.2d at 1229. As such, we determine that the declarations page language does not conflict with the policy's antistacking provision, which states that the limits of liability apply regardless of the number of watercraft or insureds involved in an accident or the number of premiums paid. Accordingly, we find the policy's declarations page and antistacking

6

provision consistent and unambiguous and the policy susceptible to one reasonable interpretation - that bodily injury coverage is limited to $100,000 for each injured person.

We agree with th Cannons that the case at bar is not a "true" antistacking case and does not involve underinsured (UIM) or uninsured motorist (UM) coverage as in Hobbs, Bruder and Grinnell. We acknowledge that those cases involved accidents in which only one of the covered vehicles was involved. By contrast, in the instant case, there were two covered vehicles involved in one accident, resulting in bodily injury to one person. While distinguished on that fact, the policy language in the UIM and UM antistacking cases and in the policy at issue here are similar. When read in conjunction with the antistacking provision, the $100,000 limit for bodily injury coverage for "each person" as stated on the declarations page, applies regardless of the number of covered watercraft, insured, or premiums paid. Based on the plain language of the policy, we find the bodily injury coverage is limited to $100,000 for each person and that Abigail is thus entitled to that amount as determined by the trial court.

The public policy argument put forth by the Cannons does not negate the effect of the policy's unambiguous terms. They contend that the policy interpretation adopted by the trial court could leave them without the coverage the Kays contemplated they were receiving based on the risks undertaken and the premiums paid. Because antistacking provisions have been determined not violative of the state's public policy, the Cannons' argument is unavailing. Grzeszczak v. Illinois Farmers Insurance Co., 168 Ill. 2d 216, 229, 659 N.E.2d 952, 959 (1995) (antistacking provisions do not contravene the public policy of Illinois). Moreover, contrary to the Cannons' claims, they are not left without compensation for Abigail's injuries and neither Stephanie nor Felicity, if found negligent in the underlying lawsuit, is left uncovered as coverage is provided up to the $100,000

7

limit. We hold that the trial court did not err in granting summary judgment in favor of Progressive.

For the foregoing reasons, the judgment of the circuit court of LaSalle County is affirmed.

Affirmed.

LYTTON and HOLDRIDGE, JJ., concur.