2023 IL App (1st) 230193-U

THIRD DIVISION
December 13, 2023

No. 1-23-0193

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| KATHRYN MIECINSKI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 21 L 3575 |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | Honorable |
| INSURANCE COMPANY, | ) | Alison C. Conlon, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices D.B. Walker and R. Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the grant of summary judgment in favor of an insurer where the unambiguous language of the automobile insurance policies precluded stacking.

¶ 2    Kathryn Miecinski (Kathryn) was injured while riding on a motorcycle which was struck by a vehicle.  After settling for the $25,000 policy limit with the vehicle driver's liability insurer, she sought additional underinsured motorist (UIM) benefits from three separate policies under which she was insured by State Farm Mutual Automobile Insurance Company (State Farm).  As each policy included a $500,000 UIM coverage limit, Kathryn filed an action in the circuit court of Cook County seeking coverage of up to $1.425 million, *i.e.,* $475,000 (representing the

$500,000 limit minus the $25,000 settlement) under each of the three policies. State Farm argued that the policies unambiguously provided that the UIM coverage limits may not be "stacked" (*i.e.*, aggregated or combined), and thus her maximum recovery was $475,000. The circuit court granted summary judgment in favor of State Farm and denied Kathryn's motion for judgment on the pleadings, and Kathryn filed this appeal. As discussed below, we affirm.

¶ 3                                    BACKGROUND

¶ 4                    *Accident and Commencement of Litigation*

¶ 5     On August 1, 2020, 17-year-old Kathryn was a passenger on a motorcycle traveling in Kane County, which was struck by a vehicle driven by Manuel Huacash Lopez (Lopez). She was ejected from the motorcycle and sustained serious injuries.

¶ 6     Kathryn's father, Stanley Miecinski (Stanley)—individually and on behalf of Kathryn— filed a complaint against Lopez in the circuit court of Kane County. In February 2021, the parties reached a settlement wherein Lopez's liability insurer tendered the entirety of the $25,000 per person liability limit, and the lawsuit was dismissed with prejudice.

¶ 7     In March 2021, after Kathryn had turned 18 years old, her attorneys made a claim for up to $1.425 million in UIM benefits under three policies issued by State Farm, which are described below. State Farm responded that the maximum coverage available to Kathryn was $500,000 and sent a check in that amount labeled "Final UIM Settlement" to her attorneys.[1]

¶ 8     In July 2021, Kathryn filed a complaint for declaratory judgment against State Farm in the circuit court of Cook County. She alleged that certain language in the body of the three State

_____

[1] Although the parties dispute whether the State Farm UIM coverage limits should be stacked, the policies expressly provide that the amounts recovered from the insurance policies maintained on the underinsured motor vehicle (*i.e.*, $25,000 settlement) should be deducted from the $500,000 UIM limit. Thus, the original check amount of $500,000 appears to have been erroneous.

Farm policies conflicted with language on the declarations pages, and based on the ambiguity, she was entitled to UIM coverage of up to $1.425 million, *i.e.*, the $500,000 UIM coverage limit less the $25,000 settlement amount ($475,000) as to each of the three policies.

¶ 9                                      *State Farm Policies*

¶ 10     The respective declarations pages for the three policies listed specific information for each policy.  The first policy covered a 2015 Kia Forte, and the named insureds were Stanley, his wife Sharon Miecinski (Sharon), and Kathryn.  The policy period was from July 22, 2019 to January 22, 2021.  The UIM premium was $70.26, and the total premium was $1,423.88.  The second policy—covering a 2014 Lexus RX 350—was issued to Stanley and Sharon, and the policy period was from April 11, 2020 to October 11, 2020.  Sharon was designated as the principal driver, and Kathryn was listed as an "other household driver."  The UIM premium was $23.42, and the total premium was $438.22.  The third policy covered a 2005 Acura MDX; the policy period was April 11, 2020 to October 11, 2020.  The policy was issued to Stanley, Sharon, and Kathryn.  Stanley was designated as the principal driver, and Kathryn was listed as an "assigned driver."  The UIM premium was $23.42, and the total premium was $534.19.

¶ 11     The policies stated that UIM coverage for bodily injury was provided if a "W" was shown under the symbols on the declarations page.  Each of the declarations pages included the "W" and provided for $500,000 in UIM coverage for bodily injury.

¶ 12     The parties agree that the relevant language in the body of each policy was the same. Each policy included the following language in the UIM coverage section:

"If Other Underinsured Motor Vehicle Coverage Applies

1.   If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm*

*Companies* apply to the same *bodily injury*, then:

    a. the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment." (Emphases in original.)

¶ 13                                     *Circuit Court Proceedings*

¶ 14      After the circuit court of Cook County denied its motion to transfer the case to Lake County under the doctrine of *forum non conveniens*, State Farm filed a counterclaim for declaratory action. State Farm alleged that the maximum UIM coverage amount which Kathryn could recover was $475,000 ($500,000 minus the $25,000 settlement). State Farm also filed an answer to her complaint, wherein it acknowledged that Kathryn qualified as an insured under each policy but denied there was any ambiguity which would permit "stacking" of the UIM coverage limits under the three policies.

¶ 15      Kathryn filed a motion for judgment on the pleadings, wherein she argued that the existence of three policies listing separate vehicles and separate UIM coverage limits with separate premiums—when met with an antistacking clause precluding the stacking of such coverage—creates an inherent ambiguity that must be resolved in her favor, as the insured. State Farm filed a combined motion for summary judgment and response to the motion for judgment on the pleadings, arguing that the policies plainly and unambiguously precluded stacking.

¶ 16      Following briefing, the circuit court granted State Farm's motion for summary judgment and denied Kathryn's motion for judgment on the pleadings. Kathryn filed this timely appeal.

¶ 17                                    ANALYSIS

¶ 18    Kathryn contends on appeal that the circuit court erred in granting State Farm's motion

for summary judgment and denying her motion for judgment on the pleadings.  She argues that

an ambiguity exists between the declarations pages and the UIM "other coverage" provisions in

each policy.  According to Kathryn, State Farm "knowingly provided illusory coverage" under

two of the three policies if the policy language is interpreted as State Farm suggests.  Conversely,

State Farm maintains that the policies plainly and unambiguously prohibit stacking of the UIM

coverage limits and that it did not collect premiums for "illusory" coverage.

¶ 19                     *Summary Judgment and Judgment on the Pleadings*

¶ 20    Under section 2-1005(c) of the Code of Civil Procedure, summary judgment is

appropriate where "the pleadings, depositions, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2022).  When

considering whether a genuine issue of material fact exists, a court construes the evidence in the

light most favorable to the nonmoving party and strictly against the movant.  *Johnson v.*

*Armstrong*, 2022 IL 127942, ¶ 31.

¶ 21    "Like a motion for summary judgment, a motion for judgment on the pleadings 'is

properly granted if the pleadings disclose no genuine issue of material fact [so] that the movant is

entitled to judgment as a matter of law.' "  *Illinois State Bar Ass'n Mutual Insurance Co. v.*

*McNabola Law Group, P.C.*, 2019 IL App (1st) 182386, ¶ 12 (quoting *Pekin Insurance Co. v.*

*Wilson*, 237 Ill. 2d 446, 455 (2010)).  See 735 ILCS 5/2-615(e) (West 2022) ("[a]ny party may

seasonably move for judgment on the pleadings"); *Hess v. Estate of Klamm*, 2020 IL 124649,

¶ 14.  Where parties file "cross-motions" for summary judgment and judgment on the pleadings,

"they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Illinois Emcasco Insurance Co. v. Tufano*, 2016 IL App (1st) 151196, ¶ 17.

¶ 22     We review *de novo* the order granting summary judgment in favor of State Farm and denying Kathryn's motion for judgment on the pleadings. *Robinson v. Village of Sauk Village*, 2022 IL 127236, ¶ 16 (addressing summary judgment); *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 16 (addressing judgment on the pleadings). The construction of an insurance policy also presents a question of law, which we must review *de novo*. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 30. "*De novo* review means that we perform the same analysis a trial court would perform." *Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279, ¶ 29.

¶ 23                    *Construction of an Insurance Policy*

¶ 24     As an insurance policy is a contract, the rules applicable to contract interpretation govern. *Sanders v. Illinois Union Insurance Co.*, 2019 IL 124565, ¶ 22.  "The primary function of the court in construing contracts for insurance is to ascertain and give effect to the parties' intent as expressed in the insurance contract's language." *West Bend*, 2021 IL 125978, ¶ 32.

¶ 25     Where the policy terms are clear and unambiguous, we will give them their plain and ordinary meaning.  *Id.*  Ambiguity exists if a term is susceptible to more than one reasonable interpretation.  *Sanders*, 2019 IL 124565, ¶ 23.  "We will not find a provision ambiguous merely because the parties disagree on its meaning."  *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 18.  As with any contract, we construe an insurance policy as a whole; we give effect to each provision where possible, as we must assume that it was intended to serve a purpose.  *Sanders*, 2019 IL 124565, ¶ 23.

¶ 26     If policy terms are susceptible to more than one meaning, they are considered ambiguous

and will be construed strictly against the insurer which drafted the contract. *West Bend*, 2021 IL 125978, ¶ 32. See also *Firebirds International*, 2022 IL App (1st) 210558, ¶ 18 (noting that "[w]here an ambiguity exists, courts strictly construe the policy against the insurer that drafted it and liberally construe it in favor of the insured"). " 'This rule of construction, however, does not justify construing a contract against an insurer where no real ambiguity exists.' " *Firebirds International*, 2022 IL App (1st) 210558, ¶ 18 (quoting *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 495 (1985)). See also *Barlow v. State Farm Mutual Automobile Insurance Co.*, 2018 IL App (5th) 170484, ¶ 13 (noting that "[r]easonableness is the key, and the touchstone is whether the policy is subject to more than one reasonable interpretation").

¶ 27                                    *The State Farm Policies*

¶ 28     The issue in this case is whether there should be stacking of the UIM policy limits of the three State Farm policies under which Kathryn was insured. As noted above, Kathryn maintains that the existence of the three State Farm policies listing different vehicles and separate UIM coverage limits with separate premiums—when confronted with an antistacking provision which precludes the stacking of such coverage—creates an inherent ambiguity that must be resolved against State Farm (as the insurer) and in her favor (as the insured).

¶ 29     As recognized by the Illinois Supreme Court, the purpose of UIM coverage is to "fill the gap" between the amount of the tortfeasor's (*e.g.*, Lopez's) insurance and the amount of UIM coverage that "the insured opted to buy." *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 230 (1996). Antistacking provisions in insurance policies are expressly allowed under the Illinois Insurance Code. 215 ILCS 5/143a-2(5) (West 2020) (stating "[n]othing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of

coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage"). Such provisions generally are not contrary to public policy, and thus "an unambiguous antistacking clause will be given effect by a reviewing court." *Hess*, 2020 IL 124649, ¶ 16.

¶ 30 Certain Illinois courts have determined that, despite antistacking language in the body of a policy, a declarations page that prints the policy limit more than once may reasonably be interpreted as providing a policy limit that equals the sum of the printed limits. *Barlow*, 2018 IL App (5th) 170484, ¶ 14. Kathryn cites cases which involve this scenario, *e.g.*, *Cherry v. Elephant Insurance Co.*, 2018 IL App (5th) 170072, ¶ 3 (addressing a single policy which covered multiple vehicles and charged multiple premiums), and *Johnson v. Davis*, 377 Ill. App. 3d 602, 603 (2007) (same). *Cherry* and *Johnson*, however, are inapposite. Unlike in those cases, the instant case involves three separate policies, thus mitigating any potential ambiguity resulting from "listing multiple numerical limits on the policy's declaration page." *Cherry*, 2018 IL App (5th) 170072, ¶ 17. In any event, our supreme court has found that there is no "*per se* rule that an insurance policy will be deemed ambiguous as to the limits of liability any time the limits are listed more than once on the declarations." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 26 n.1 (2005).

¶ 31 We further observe that the antistacking provisions at issue in *Cherry* and *Johnson* are substantially different from the antistacking language in this case. The antistacking clause in *Cherry* provided " '[i]f more than one policy of uninsured or underinsured motorist coverage applies to an accident, the maximum the Insured may recover from all of the applicable coverage is the highest limit available under one policy for one auto.' " *Cherry*, 2018 IL App (5th) 170072, ¶ 6. The appellate court expressed concern regarding the use of the term "coverage," as

opposed to "limits of liability," since a reasonable interpretation may be that various types of *coverage* (*e.g.*, property damage coverage, UIM coverage) may not be stacked. *Id.* ¶ 22. The appellate court thus found "[t]he language is plainly susceptible to more than one reasonable interpretation—the insured may be prohibited from combining his different coverages, or he may be prohibited from aggregating the limits of his coverages, despite paying premiums for them all." *Id.*

¶ 32    In *Johnson*, the "general-provisions" portion of the policy contained an antistacking clause concerning coverage by two or more policies: " 'If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.' " *Johnson*, 377 Ill. App. 3d at 605. Given that the declarations page for the single policy listed the $50,000 UIM limit four separate times (for four vehicles) and charged separate premiums, the appellate court found that the "general antistacking provision" created an ambiguity and thus stacking was permitted. *Id.* at 610.

¶ 33    As noted above, each of the State Farm policies under which Kathryn was insured includes an express antistacking provision which applies if the UIM coverage "provided by this policy" and other State Farm vehicle policies issued to the insured "apply to the same bodily injury." (Emphases omitted.) The provision states that the UIM coverage limits of such policies "will not be added together," and the "maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies." Unlike the provisions in *Cherry* and *Johnson*, the foregoing language is susceptible to only one reasonable interpretation, *i.e.*, the UIM coverage limits from multiple policies will not be aggregated. Even assuming *arguendo* that the declarations pages left open the question of stacking, this

antistacking language in the body of the policy eliminated any uncertainty by unambiguously prohibiting stacking. See *Hess*, 2020 IL 124649, ¶ 28. See also *Grzeszczak*, 168 Ill. 2d at 225 (finding that the antistacking language "unambiguously prevents an insured from aggregating the coverage provided by multiple policies").

¶ 34    We observe that the instant case is substantially similar to *State Farm Mutual Automobile Insurance Co. v. McFadden*, 2012 IL App (2d) 120272. The *McFadden* insureds had five separate policies with State Farm, each with a $100,000 UIM coverage limit; each policy contained its own declarations sheet, listing the relevant vehicle, premium amount, and UIM coverage amount. *Id.* ¶¶ 1, 5. The insureds maintained that they were entitled to UIM coverage of up to $500,000, representing the $100,000 limit under each of the five policies. *Id.* ¶ 5. State Farm contended that express antistacking language in the policies prohibited such aggregation, and thus the limit of the UIM coverage was $100,000. *Id.* ¶ 2.

¶ 35    In affirming the denial of stacked coverage, the *McFadden* appellate court rejected the insureds' assertion that "because each policy's respective declarations sheet reflects a separate premium amount for a full $100,000 limit of underinsured coverage without a single qualifying statement, an insured could reasonably believe that he or she was entitled to the cumulative amount of all five policies' coverage." *Id.* ¶ 25. The appellate court found that, although each policy's declarations reflected a separate premium amount—thus leaving open the question of stacking—each policy's antistacking provision clarified that the total UIM coverage limit available was the " 'limit of liability of the single policy providing the highest limit.' " *Id.* ¶ 31.

¶ 36    As in *McFadden*, we conclude that "[t]he declarations sheets, read in isolation, might leave open the question of stacking, but the antistacking provision unambiguously answers that question in the negative." *Id.* ¶ 36. Indeed, "[t]his is precisely why an insurance policy must be

interpreted from an examination of the complete document." *Hobbs*, 214 Ill. 2d at 23. See *Grinnell Select Insurance Co. v. Baker*, 362 F.3d 1005, 1007 (7th Cir. 2004) (referring to an antistacking clause as a "disambiguator" and noting that "[t]o see ambiguity in the policy is to learn why the anti-stacking clause was included; it is not remotely to justify overriding the anti-stacking clause").

¶ 37  Finally, we are not persuaded by Kathryn's contention that "to accept State Farm's argument would necessarily result in State Farm having knowingly provided illusory coverage under two of the three policies issued in this case and for which individual premiums were paid." As State Farm accurately observes, "there are numerous potential circumstances where the UIM coverage of one of the subject policies would apply, but not the other two and thus not make the UIM coverage illusory." *E.g.*, *Grzeszczak*, 168 Ill. 2d at 219-20 (finding "the second policy did provide coverage to persons not covered by the first policy, namely, nonfamily passengers riding in the [vehicle covered by the second policy] who were involved in an accident with an underinsured motorist"). Furthermore, "[t]he payment of multiple premiums (and the notion that this entitles an insured to separate coverage) is of no consequence where an antistacking provision's clear and unambiguous language manifests the parties' contrary intent." *McFadden*, 2012 IL App (2d) 120272, ¶ 31.

¶ 38  As noted above, where an ambiguity in an insurance policy is found, we will construe it in favor of the insured. *Hobbs*, 214 Ill. 2d at 30-31. We will not, however, strain to find ambiguity where none exists. *Hess*, 2020 IL 124649, ¶ 16. When viewed in their entirety, the State Farm policies in this case plainly and unambiguously provided that the UIM coverage limits could not be stacked. We thus affirm the order of the circuit court granting State Farm's motion for summary judgment and denying Kathryn's motion for judgment on the pleadings.

¶ 39                                    CONCLUSION

¶ 40     The judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 41     Affirmed.